**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 14, 2006

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff -Appellee,

v

No. 126956

CLEVELAND WILLIAMS,

    Defendant -Appellant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

The 180-day rule, codified in MCL 780.131, provides that a prison inmate who has a pending criminal charge must be tried within 180 days after the Department of Corrections delivers to the prosecutor notice of the inmate's imprisonment and requests disposition of the pending charge. In *People v Smith*, 438 Mich 715, 717-718 (Levin, J.), 719 (Boyle, J.); 475 NW2d 333 (1991), this Court held that the 180-day rule does not apply when the pending charge provides for mandatory consecutive sentencing. In the instant case, the trial court initially dismissed the charges against defendant on the basis of a violation of the 180-day

rule, but the Court of Appeals vacated the order of dismissal and remanded so the trial court could address the application of the rule in *Smith, supra*. On remand, the trial court, relying on the rule in *Smith, supra*, found no violation of the 180-day rule. The Court of Appeals thereafter dismissed the appeal and remanded for trial.

We overrule *Smith, supra*, and its progeny to the extent that they are inconsistent with the plain language of the 180-day-rule statute, which contains no exception for charges subject to consecutive sentencing. This decision is to be given limited retroactive effect, applying to those cases pending on appeal in which this issue has been raised and preserved. See *People v Cornell*, 466 Mich 335, 367; 646 NW2d 127 (2002). However, we affirm the lower courts' decision that the 180-day-rule statute was not violated because defendant was tried within 180 days of the date that the prosecutor received actual notice that defendant was in prison awaiting disposition of his pending armed robbery charge.

## I. FACTS AND PROCEDURAL HISTORY

In 1998, after defendant's conviction of larceny from the person, MCL 750.357, he was sentenced to a one- to fifteen-year term of imprisonment. On May 7, 2000, while on parole for this conviction, defendant visited his son at the home of his son's mother, Adrian Harper. During this visit, defendant allegedly

threatened Harper with a knife and stole money from her purse.  He then stole Harper's car keys and drove away in her car.

On May 23, 2000, defendant was arrested and returned to the custody of the Michigan Department of Corrections.  On the Wayne County Prosecutor's recommendation, the magistrate signed an arrest warrant and complaint for armed robbery, MCL 750.529, on June 2, 2000.  On June 18, 2001, the Detroit Police Department took defendant into their custody for arraignment on the warrant.  After a June 28, 2001, preliminary examination, defendant was bound over for trial on the armed robbery charge.  On July 12, 2001, the Department of Corrections sent a written notice of defendant's incarceration to the prosecutor, requesting disposition of the pending warrant.  The prosecutor's office received this notice on July 16, 2001.  On July 19, 2001, an information charged defendant with armed robbery.

When the parties appeared for trial on January 9, 2002, defendant first moved to dismiss the charge, asserting violations of the 180-day rule and his right to a speedy trial.  The trial court granted defendant's motion to dismiss.  On the prosecution's appeal, the Court of Appeals peremptorily vacated the trial court's order of dismissal and remanded the matter to the trial court to address the application of *People v Chavies*, 234 Mich App 274, 280-281; 593 NW2d 655 (1999).  *People v Williams,* unpublished order of the Court of Appeals, entered June 9, 2003 (Docket No. 239662).  *Chavies* relied on *Smith* in holding that the

180-day rule does not apply to persons who commit a crime while on parole because that person is subject to mandatory consecutive sentences. The Court of Appeals also ordered the trial court to make findings and discuss the application of the speedy trial factors articulated in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

On remand, the trial court followed *Chavies, supra*, concluding that defendant was subject to mandatory consecutive sentencing for the pending armed robbery charge. Regarding the speedy trial issue, the court ruled that the charge against defendant should not have been dismissed because defendant had not insisted on a speedy trial and was unable to show prejudice. Upon receiving the trial court's findings, the Court of Appeals dismissed the appeal and remanded the case to the circuit court for trial. Unpublished order of the Court of Appeals, entered July 9, 2004 (Docket No. 239662). We ordered the clerk to schedule oral argument on whether to grant the defendant's application for leave to appeal or take other peremptory action. 472 Mich 872 (2005).

## II. STANDARD OF REVIEW

This case involves the interpretation of MCL 780.131. We review issues of statutory interpretation de novo. *People v Stewart*, 472 Mich 624, 631; 698 NW2d 340 (2005). Our primary purpose in construing statutes is "to discern and give effect to the Legislature's intent." *People v Morey*, 461 Mich 325, 330; 603

4

NW2d 250 (1999). "We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *Id.*

Whether defendant was denied his right to a speedy trial is an issue of constitutional law, which we also review de novo. *People v Hickman*, 470 Mich 602, 605; 684 NW2d 267 (2004). We generally review a trial court's factual findings for clear error. MCR 2.613(C); *People v Knight*, 473 Mich 324, 338; 701 NW2d 715 (2005).

### III. ANALYSIS

#### A. The Statutory 180-Day Rule

As a preliminary matter, before determining whether the 180-day rule was violated, we must first address whether defendant is entitled to assert the rights granted under the 180-day-rule statute although he faces mandatory consecutive sentencing on the pending charge. Because *Smith, supra*, would preclude defendant from making a 180-day-rule claim, we must address the validity of *Smith, supra*, before determining whether defendant's claim is meritorious. We ultimately conclude that defendant's rights under the 180-day rule were not violated (and, in so holding, reach the same outcome as if defendant were not entitled to the protections of the 180-day rule). Nonetheless, our conclusion that a

defendant facing consecutive sentencing may assert a claim based on the 180-day-rule statute  ensures that our holding is not dicta.[1]

The 180-day rule is set forth in MCL 780.131:

(1) Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.

(2) This section does not apply to a warrant, indictment, information, or complaint arising from either of the following:

(a) A criminal offense committed by an inmate of a state correctional facility while incarcerated in the correctional facility.

(b) A criminal offense committed by an inmate of a state correctional facility after the inmate has escaped from the correctional facility and before he or she has been returned to the custody of the department of corrections.

---

[1] Obiter dictum is defined as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential . . . ."  Black's Law Dictionary (7th ed).

MCL 780.133 requires dismissal with prejudice if a prisoner is not brought to trial within the 180-day time limit set forth in the act:

> In the event that, within the time limitation set forth in section 1 of this act, action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Michigan courts have inconsistently interpreted MCL 780.131 in determining whether the 180-day rule applies to defendants facing mandatory consecutive sentencing upon conviction of the pending charge. In *Loney, supra*, the Court of Appeals held that the 180-day rule applies only when the pending charge would allow concurrent sentencing:

> The purpose of the statute is clear. It was intended to give the inmate, who had pending offenses not yet tried, an opportunity to have the sentences run concurrently consistent with the principle of law disfavoring accumulations of sentences. This purpose, however, does not apply in the instance of a *new* offense committed *after* imprisonment, nor where the statute, as in the case of an escape or attempted escape, sets up a mandatory consecutive sentence. The legislature was not concerning itself with the need for dispatch in the handling of a charge brought against an inmate for offenses committed *while* in prison.
>
> * * *
>
> For the foregoing reasons, it is the opinion of this Court that the 180-day statute does not and was not intended to apply to offenses committed while in prison and for which offenses mandatory consecutive sentences are provided. [*Loney, supra* at 292-293 (emphasis in original).]

7

After *Loney*, several panels of the Court of Appeals split on the issue.[2] This Court resolved the conflict in *People v Woodruff*, 414 Mich 130; 323 NW2d 923 (1982). In *Woodruff, supra* at 137, this Court held that the 180-day rule "applies to any untried charge which carries a punishment of imprisonment in a state penal institution against any inmate, even if the offense was committed while in prison or carries a mandatory consecutive sentence." The *Woodruff* Court determined that the statutory language unambiguously set forth the extent of the 180-day rule by expressly providing that it applied to "'any' untried charge against 'any' prisoner, 'whenever' the department of corrections shall receive notice of that charge." *Id.* at 136. The *Woodruff* Court explained that the statute did not specify the type of sentence that determines the reach of the 180-day rule, but only generally referred to "'a prison sentence.'" *Id.*

Five justices thereafter agreed to overrule *Woodruff* in *Smith, supra* at 717-718 (Levin, J.), 719 (Boyle, J.). *Smith* resurrected the *Loney* panel's holding that

---

[2] Compare, e.g., *People v Charles Moore*, 111 Mich App 633; 314 NW2d 718 (1981), rev'd 417 Mich 878 (1983), *People v Grandberry*, 102 Mich App 769; 302 NW2d 573 (1980), and *People v Ewing*, 101 Mich App 51; 301 NW2d 8 (1980) (agreeing with *Loney* that the 180-day rule does not apply to criminal defendants who are facing charges that would involve mandatory consecutive sentencing), with *People v Hegwood*, 109 Mich App 438; 311 NW2d 383 (1981), *People v Marcellis*, 105 Mich App 662; 307 NW2d 402 (1981), *People v Pitsaroff*, 102 Mich App 226; 301 NW2d 858 (1980), *People v Anglin*, 102 Mich App 118; 301 NW2d 470 (1980), and *People v David Moore*, 96 Mich App 754; 293 NW2d 700 (1980) (holding that criminal defendants are entitled to the protections of the 180-day rule even if facing mandatory consecutive sentencing).

the 180-day rule does not apply to offenses committed while in prison or to offenses that provide for mandatory consecutive sentences. In the lead opinion, Justice Levin explained that he agreed with the particular portion of *Loney, supra* at 292, that discussed the purpose of the 180-day-rule statute.[3]

Defendant argues that under the plain language of MCL 780.131, the 180-day rule applies to inmates facing mandatory consecutive sentencing. The prosecution acknowledges that the *Smith* and *Chavies* decisions extend the exceptions to the 180-day rule beyond the literal wording of the statute. We agree with defendant and hold that *Smith* and its progeny contravened the plain language of the 180-day-rule statute. *Smith* resorted to the purpose of the 180-day-rule statute in determining that the statute did not apply to defendants facing mandatory consecutive sentencing.

MCL 780.131 delineates only two exceptions to the 180-day rule for those offenses committed by incarcerated and escaped prisoners. MCL 780.131(2). If the Legislature had meant to exclude inmates facing mandatory consecutive

---

[3] *Chavies, supra* at 280-281, followed *Smith, supra*. The *Chavies* panel held that "the statutory goal of allowing sentences to be served concurrently 'does not apply in a case where a mandatory consecutive sentence is required upon conviction.'" *Id.* at 280 (citation omitted).

*People v Falk*, 244 Mich App 718; 625 NW2d 476 (2001), reaffirmed *Chavies, supra*. The *Falk* panel held that the 180-day rule does not apply to a pending charge for which a possible sentence includes either imposition of a mandatory consecutive prison term or probation. *Falk, supra* at 721-722.

sentencing on pending charges from the ambit of MCL 780.131, it could have created such an exception. See *People v Barbee*, 470 Mich 283, 287; 681 NW2d 348 (2004) ("If the Legislature had meant for OV [offense variable] 19 to apply only in cases dealing with the obstruction of justice, it could have easily used that phrase."). *Smith* overstepped its bounds by drafting an exception to the 180-day rule based on the purpose of the statute.

As we explained in *Woodruff, supra* at 136, the language of MCL 780.131 expressly applies the 180-day rule to "any" untried charge against "any" prisoner "[w]henever" the Department of Corrections receives notice of that charge. The statute does not specify that the type of sentence determines the applicability of the rule. In particular, the statute does not distinguish concurrent and consecutive sentencing on the pending charge. We overrule *Smith* and its progeny to the extent that they are inconsistent with our ruling. Our decision is to have limited retroactive effect, applying to those cases pending on appeal in which this issue has been raised and preserved. See *Cornell, supra* at 367.

## B. Application of the 180-day-Rule Statute

Defendant argues that several communications satisfied the notice provision of the statute. For example, on January 26, 2001, the Department of Corrections sent written notice to the Detroit Police Department that defendant was incarcerated and sought disposition of his warrant for armed robbery. The

Department of Corrections then sent another such notice to the investigator assigned to defendant's case, which the investigator received on February 5, 2001. An employee of the Department of Corrections subsequently communicated with the investigating officer several times regarding defendant's status. Although investigating police officers may and do cooperate with the prosecutor, they are not part of the prosecutor's office. Defendant has cited no persuasive authority for his argument that the investigating police officer is an agent of the prosecutor, or that knowledge by the police of defendant's incarceration should be imputed to the prosecutor.

The 180-day-rule statute expressly provides that the Department of Corrections must deliver a written notice of incarceration and request for disposition "to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending . . . ." MCL 780.131(1). The first qualifying written notice from the Department of Corrections was received by the prosecutor on July 16, 2001. Cf. *People v Fex*, 439 Mich 117, 119-123; 479 NW2d 625 (1992), aff'd 503 US 43 (1993) (the 180-day period in Article III[a] of the Interstate Agreement on Detainers [IAD], MCL 780.601 *et seq.*, does not commence until the prisoner's request for final disposition of the charges against him or her has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him or her). There is no dispute that this written notice complied with the other requirements of the statute that it be

11

delivered by certified mail and be accompanied by a statement setting forth defendant's term of commitment, his time served, his time remaining to be served, the amount of sentence credits earned, the time of his parole eligibility, and any decisions of the parole board. Defendant's trial commenced on January 9, 2002, which was less than 180 days after the prosecutor received notice.[4] Therefore, defendant was tried within the statutory 180-day limit.

## C. MCR 6.004(D)

In addition to MCL 780.131, the Michigan Court Rules also codify the 180-day rule in MCR 6.004(D). Because the 180-day rule, as expressed in the pre-January 1, 2006, version of the court rule, may be violated even when there is no violation under the plain language of the statute, we must address whether

---

[4] Because MCL 780.131 does not specifically address how courts should compute the 180-day time period, we turn to MCR 1.108, which unambiguously governs the computation of a period prescribed by statute. MCR 1.108(1) provides:

> The day of the act, event, or default after which the designated period of time begins to run is not included. The last day of the period is included, unless it is a Saturday, Sunday, legal holiday, or holiday on which the court is closed pursuant to court order; in that event the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or holiday on which the court is closed pursuant to court order.

Thus, the 180-day period begins to run the day after the prosecutor receives notice that a defendant is incarcerated and awaiting trial on pending charges. See *People v Sinclair*, 247 Mich App 685, 688-689; 638 NW2d 120 (2001) (holding that MCR 1.108[1] applies to computation of time for the 180-day rule set forth in the Interstate Agreement on Detainers [IAD], MCL 780.601 *et seq*.).

12

defendant is entitled to relief under the court rule. We conclude that defendant is not entitled to relief under the court rule because the court rule must yield to the statute.

At all times relevant to this case, MCR 6.004(D) provided:

> (D) Untried Charges Against State Prisoner.
>
> (1) *The 180-Day Rule.* Except for crimes exempted by MCL 780.131(2), the prosecutor must make a good faith effort to bring a criminal charge to trial within 180 days of either of the following:
>
> (a) the time from which the prosecutor knows that the person charged with the offense is incarcerated in a state prison or is detained in a local facility awaiting incarceration in a state prison, or
>
> (b) the time from which the Department of Corrections knows or has reason to know that a criminal charge is pending against a defendant incarcerated in a state prison or detained in a local facility awaiting incarceration in a state prison.
>
> For purposes of this subrule, a person is charged with a criminal offense if a warrant, complaint, or indictment has been issued against the person.
>
> (2) *Remedy.* In cases covered by subrule (1)(a), the defendant is entitled to have the charge dismissed with prejudice if the prosecutor fails to make a good-faith effort to bring the charge to trial within the 180-day period. When, in cases covered by subrule (1)(b), the prosecutor's failure to bring the charge to trial is attributable to lack of notice from the Department of Corrections, the defendant is entitled to sentence credit for the period of delay. Whenever the defendant's constitutional right to a speedy trial is violated, the defendant is entitled to dismissal of the charge with prejudice.[5]

---

[5] MCR 6.004(D) has been amended to conform to the 180-day rule as set forth in MCL 780.131, effective January 1, 2006. The court rule now provides:

(continued…)

13

MCR 6.004(D) was adopted in 1989 to codify, with two exceptions, this Court's interpretation of the 180-day-rule statute in *People v Hill,* 402 Mich 272; 262 NW2d 641 (1978), *People v Hendershot*, 357 Mich 300; 98 NW2d 568 (1959), and dictum in *People v Castelli,* 370 Mich 147; 121 NW2d 438 (1963). We hold that this version of MCR 6.004(D) was invalid to the extent that it improperly deviated from the statutory language. This Court's holding in *Hill, supra*, and its dicta in *Castelli, supra*, along with the portion of the court rule implementing these holdings, improperly expanded the scope of the 180-day-rule statute by requiring the prosecutor to bring a defendant to trial within 180 days of

(…continued)
       (D) Untried Charges Against State Prisoner.

       (1) *The 180-Day Rule*. Except for crimes exempted by MCL 780.131(2), the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.

       (2) *Remedy*. In the event that action is not commenced on the matter for which request for disposition was made as required in subsection (1), no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information, or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

14

the date that the Department of Corrections knew or had reason to know that a criminal charge was pending against the defendant. MCR 6.004(D)(1)(b). This language does not appear in the statute. The statutory trigger is notice to the prosecutor of the defendant's incarceration and a departmental request for final disposition of the pending charges. The statute does not trigger the running of the 180-day period when the Department of Corrections actually learns, much less should have learned, that criminal charges were pending against an incarcerated defendant. We decline to read such nonexistent language into the statute. *American Federation of State, Co & Muni Employees v Detroit*, 468 Mich 388, 412; 662 NW2d 695 (2003). We overrule *Hill, supra*, and *Castelli, supra*, to the extent that they are inconsistent with MCL 780.131. We also give this decision limited retroactive effect. See *Cornell, supra* at 367.

"'If a particular court rule contravenes a legislatively declared principle of public policy, having as its basis something other than court administration . . . the [court] rule should yield.'" *McDougall v Schanz*, 461 Mich 15, 30-31; 597 NW2d 148 (1999) (citation omitted). The preamendment version of MCR 6.004(D) is not purely a matter of court administration. Instead, this court rule both codified and modified this Court's interpretations of the statutory 180-day rule. MCR 6.004(D) does not solely attempt to "'regulate the day-to-day procedural operations of the courts.'" *McDougall, supra* at 32, quoting *People v McKenna*, 196 Colo 367, 372; 585 P2d 275 (1978). As such, the court rule must yield to MCL 780.131.

15

D.  Speedy Trial

Finally, defendant contends that the trial court erred in holding that his right to a speedy trial under US Const, Am VI, and Const 1963, art 1, § 20, was not infringed.  Although the delay was lengthy, we affirm the trial court's holding because the trial court's factual findings underlying its decision were not clearly erroneous.

1.  Waiver

The prosecution initially argues that defendant waived his right to a speedy trial by agreeing to the trial date.  Waiver is the intentional relinquishment or abandonment of a known right or privilege.  *People v Grimmett,* 388 Mich 590, 598; 202 NW2d 278 (1972), overruled on other grounds in *People v White*, 390 Mich 245; 212 NW2d 222 (1973).  Courts "should '"indulge every reasonable presumption against waiver of fundamental constitutional rights."'"  *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004) (citations omitted).  Waiver consists of (1) specific knowledge of the constitutional right and (2) an intentional decision to abandon the protection of the constitutional right.  *Grimmett, supra* at 598.

At the October 12, 2001, pretrial conference, the trial court offered January 9, 2002, as the earliest possible trial date.  In response, defense counsel agreed, and defendant stated, "I can accept that."  This brief colloquy did not qualify as a

16

knowing and intentional waiver of defendant's right to a speedy trial. We see no evidence that defendant specifically considered and purposely waived his right to a speedy trial. Indeed, we will not presume waiver from a silent record. *Williams, supra* at 641. Nonetheless, defendant's agreement to the trial date is relevant in weighing the *Barker* factors to determine if he was denied the right to a speedy trial.

## 2. The *Barker* Factors

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. We enforce this right both by statute and by court rule. MCL 768.1; MCR 6.004(A). The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest. *United States v Marion*, 404 US 307, 312; 92 S Ct 455; 30 L Ed 2d 468 (1971). In contrast to the 180-day rule, a defendant's right to a speedy trial is not violated after a fixed number of days. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003). This Court adopted the *Baker* standards for a speedy trial in *Grimmett, supra* at 606. In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Id.* Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no

17

injury. *People v Collins*, 388 Mich 680, 695; 202 NW2d 769 (1972). Under the *Barker* test, a "presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *People v Wickham*, 200 Mich App 106, 109-110; 503 NW2d 701 (1993).

3. Application of the *Barker* Factors

The first *Barker* factor is the length of the delay. Because the length of delay between defendant's arrest and the trial was over nineteen months, the delay was presumptively prejudicial. *Collins, supra* at 695. Thus, we must consider the other *Barker* factors to determine if defendant has been deprived of the right to a speedy trial.

Under the second *Barker* factor, the prosecution offered no compelling reason for the delay between defendant's arrest and the time the prosecutor's office received notice of defendant's incarceration on July 16, 2001. In fact, the prosecutor agreed that the delay had been "inexcusable." From the time the prosecutor's office learned of defendant's incarceration, it did attempt to move the proceedings along as quickly as possible. The trial court found that the delay between July 16, 2001, and the final pretrial conference on October 12, 2001, was attributable to defendant and his counsel. Defendant's first pretrial conference on the armed robbery charge was set for July 27, 2001, only eleven days after the

18

prosecutor received written notice that defendant was incarcerated and had a pending charge. This conference was adjourned when defendant's attorney failed to appear. The conference was rescheduled for August 10, 2001. At this conference, defense counsel indicated that he intended to file a motion to dismiss the armed robbery charge based on a violation of the 180-day rule. However, counsel never filed this motion. The trial court scheduled another pretrial conference for September 21, 2001, but defense counsel once again failed to appear. On September 28, 2001, defendant sought to terminate his appointed attorney's services. The court appointed a new attorney to represent defendant who had to familiarize himself with the case. Thus, we see no clear error in the trial court's finding that defendant was responsible for this delay.

The delay between the October 12, 2001, final pretrial conference and the January 9, 2002, trial date can be attributed to docket congestion. "Although delays inherent in the court system, e.g., docket congestion, 'are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.'" *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997), quoting *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993).

The trial court weighed the third prong of the *Barker* test heavily against defendant. As of the final pretrial conference, defendant had not objected to any of the delays. Moreover, he accepted the January 9, 2002, trial date offered by the

19

court. Further, defendant did not assert a speedy trial violation until the day before trial. Thus, the trial court did not clearly err in weighing this factor heavily against defendant. See *Collins, supra* at 692-694 (the prejudice prong weighed heavily against a defendant who did not assert his right to a speedy trial until the day before trial).

The fourth and final prong of *Barker* concerns the prejudice to defendant. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Collins, supra* at 694. Defendant argues that he was personally prejudiced by the lengthy incarceration because (1) he received no credit for the time served before sentencing because he was on parole when he was arrested, and (2) the delay caused him to suffer mental anxiety. We agree that defendant suffered considerable personal deprivation by his 19-month incarceration before trial. Nonetheless, this Court has held that the prejudice prong of the *Barker* test may properly weigh against a defendant incarcerated for an even longer period if his defense is not prejudiced by the delay. See, e.g., *People v Chism*, 390 Mich 104, 115; 211 NW2d 193 (1973) ("on the matter of prejudice to defendant because of the length of time before his trial, the most important thing is that there is no evidence that a fair trial was jeopardized by delay, although obviously 27 months of incarceration is not an insignificant personal hardship"); see also *Grimmett, supra* at 606-607 (the prejudice prong

weighed against the defendant where the delay was 19 months, but did not prejudice the defendant's defense).

Prejudice to the defense is the more serious concern, "'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Chism, supra* at 114, quoting *Barker, supra* at 532. The trial court found that defendant's ability to defend was not prejudiced by the delay. Because the record contains no specific proof of such prejudice, the trial court's finding was not erroneous.

Although a 19-month delay is presumptively prejudicial, the trial court did not err in ruling that defendant was not denied his right to a speedy trial. The trial court's factual findings underlying this decision were not clearly erroneous. Defendant did not object to any delays, agreed to the trial date, and did not assert his right to a speedy trial until the day before trial. He did not demonstrate that any delay prejudiced the defense of his case. Further, defendant and his counsel were partially responsible for the delay. Therefore, the trial court properly declined to dismiss the charge against defendant.

## IV. CONCLUSION

Although the 180-day rule applied to defendant, the statute was not violated because the prosecution brought defendant to trial within 180 days of receiving notice that defendant was in prison, awaiting disposition of his pending charge.

21

After weighing the four *Barker* factors, we conclude that defendant's constitutional right to a speedy trial was not violated. Accordingly, we affirm the Court of Appeals order to remand for trial on the armed robbery charge.

Maura D. Corrigan
Clifford W. Taylor
Elizabeth A. Weaver
Robert P. Young, Jr.
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                           No.  126956

CLEVELAND WILLIAMS

        Defendant-Appellant.

_____

CAVANAGH, J. (*concurring in the result only*).

      I concur with the result reached by the majority to overrule *People v Smith*, 438 Mich 715; 475 NW2d 333 (1991), and its progeny because these cases are inconsistent with the plain language of MCL 780.131, the 180-day-rule statute. The statute contains no exception for charges subject to consecutive sentencing. Moreover, while I agree with the majority that, under the facts of this case, there was not a violation of the 180-day-rule statute or defendant's constitutional right to a speedy trial, if defendant is ultimately convicted, I urge the trial court to consider the delay in bringing defendant to trial when imposing defendant's sentence. If convicted, the delay in prosecuting defendant will in fact delay the start of defendant's minimum sentence.

                                         Michael F. Cavanagah
                                         Marilyn Kelly